David D. Sohn, Esq. (Cal. Bar No. 221119)
david@sohnlegal.com
SOHN LEGAL GROUP, P.C.
275 Battery Street, Suite 200
San Francisco, California 94111
Telephone:    415-421-1300
Facsimile:    415-423-3455

Attorneys for Plaintiff
MARCEL SIELER

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

MARCEL SIELER, an individual,

　　　　　　Plaintiff,

　　　v.

ATIEVA USA, INC. d/b/a LUCID
MOTORS USA, INC., a California
corporation; and DOES 1-20, inclusive,

　　　　　　Defendants.

Case No.

**COMPLAINT FOR DAMAGES**

1.　**Failure To Pay Overtime Wages**
2.　**Failure To Provide Meal Periods**
3.　**Failure To Provide Rest Periods**
4.　**Failure To Pay All Wages Upon Termination Of Employment**
5.　**Failure To Furnish Accurate Itemized Wage Statements**
6.　**Failure To Maintain Accurate Payroll Records**
7.　**Failure To Pay All Wages In A Timely Manner**
8.　**Violation Of Business &Professions Code § 17200** *et seq.*
9.　**Violation of Labor Code § 2698** *et seq.*
10.　**Conversion**
11.　**Declaratory Relief**
12.　**False Representations To Induce Relocation**
13.　**Intentional Misrepresentation**
14.　**Negligent Misrepresentation**

**JURY TRIAL DEMANDED**

Plaintiff MARCEL SIELER ("Plaintiff"), individually, and in his representative capacity, alleges the following:

## INTRODUCTION

1.      This wage and hour misclassification lawsuit is brought by Plaintiff who was employed by Defendants ATIEVA USA, INC. d/b/a LUCID MOTORS USA, INC. and DOES 1-20 (collectively, "Defendants") during the four (4) years preceding the filing of this lawsuit. Plaintiff was denied the benefits and protections provided for under the Labor Code and other statutes and regulations applicable to non-exempt employees in the State of California.

2.      Plaintiff alleges Defendants had and continue to have a consistent policy and/or practice of: (i) misclassifying its Technical Specialists and Senior Technical Specialists as exempt employees instead of non-exempt employees; (ii) permitting, encouraging, and/or requiring Plaintiff and other aggrieved current and former employees to work in excess of eight (8) hours per day and/or forty (40) hours per week without paying them overtime wages as required by California law; (iii) failing to provide Plaintiff and other aggrieved current and former employees proper meal periods as required by California law; (iv) failing to provide Plaintiff and other aggrieved current and former employees proper rest periods as required by California law; (v) failing to pay Plaintiff and other aggrieved current and former employees all of their wages upon the termination of their employment with Defendants as required by California law; (vi) knowingly and intentionally failing to furnish Plaintiff and other aggrieved current and former employees with accurate itemized wage statements required by California law; (vii) unlawfully failing to maintain accurate payroll records as required by California law; (viii) failing to pay Plaintiff and other aggrieved current and former employees all wages owed in a timely manner as required by California law; (ix) converting Plaintiff's and other aggrieved current and former employees' earned wages for Defendants' benefit and use; (x) violating California Business & Professions Code § 17200 *et seq.*; and (xi) violating California Labor Code § 2698 *et seq.*

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332.  Plaintiff

is a citizen of Germany and ATIEVA USA, INC. d/b/a LUCID MOTORS USA, INC. is a corporation incorporated in the State of Delaware with a principle place of business in the State of California.

4.   The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.   Venue is proper in the United States District Court, Northern District of California pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

6.   Plaintiff is an adult resident of Germany.  Plaintiff is a "person" within the meaning of Business & Professions Code § 17201 and Labor Code § 18.

7.   Defendant ATIEVA USA, INC. d/b/a LUCID MOTORS USA, INC. ("ATIEVA") is a Silicon Valley company that designs, develops, and builds electric vehicles.  Upon information and belief, ATIEVA is a California corporation headquartered in Menlo Park, California.  Upon information and belief, ATIEVA is, and at all times relevant hereto has been, authorized to, and does, conduct business in the State of California.  ATIEVA is a "person" within the meaning of California Business & Professions Code § 17201 and California Labor Code § 18.

8.   The true names and capacities of DOES 1-20, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, who therefore sues such defendants by fictitious names pursuant to California Code of Civil Procedure § 474.  Plaintiff will amend this complaint to show the true names, capacities, and involvement of DOES 1-20, inclusive, once they are ascertained.  Plaintiff is informed, believes, and thereon alleges that each of the defendants designated as a DOE is responsible in some manner for the events, happenings, and omissions described herein, and that Plaintiff's injuries and damages were proximately caused by said defendants.  Plaintiff is informed, believes, and thereon alleges that at all times herein mentioned, each of the DOES 1-20, inclusive, was an agent, partner, affiliate, joint employer, joint venturer, owner, co-owner, employee, successor, predecessor, parent, and/or subsidiary of each of the remaining defendants, and each of them, was at all times acting within the purpose and scope

1  of the applicable relationship.

2       9.     There exists, and at all times herein mentioned there existed, a unity of interest and

3  ownership, and control between ATIEVA and DOES 1-20 such that: (i) any individuality and

4  separateness between ATIEVA and DOES 1-20 has ceased; (ii) ATIEVA and DOES 1-20 are

5  *alter egos* of each other; (iii) the liability-limiting privileges under the law for ATIEVA and

6  DOES 1-20 should be equitably disregarded; and (iv) the assets of DOES 1-20 should equitably be

7  made available to satisfy the liability of ATIEVA arising from any monetary judgment to be

8  entered upon the causes of action in this action.

9  **PAGA REPRESENTATIVE ACTION ALLEGATIONS**

10       10.     On February 17, 2017, Plaintiff submitted online a written notice of Defendants'

11  violations of various provisions of the California Labor Code to the California Labor and

12  Workforce Development Agency ("LWDA").  Plaintiff served a copy of this written notice to

13  Defendants by certified mail.

14       11.     The LWDA did not provide notice of its intention to investigate Defendants'

15  alleged violations within sixty-five (65) calendar days of the February 17, 2017, the postmark date

16  of Plaintiff's written notice. *See* Cal. Lab. Code § 2699.3(a)(2)(A).

17       12.     Plaintiff is informed and believes and thereon alleges that Defendants uniformly

18  misclassified all of its Technical Specialists and Senior Technical Specialists, including him, as

19  exempt employees when they were and are, in fact, non-exempt employees.

20       13.     As explained in more detail below, Plaintiff and other aggrieved current and former

21  employees did not and do not qualify for the Professional Exemption under Industrial Welfare

22  Commission ("IWC") Wage Order No. 4.  Plaintiff and other aggrieved current and former

23  employees did not and do not perform work requiring "advanced knowledge" that was

24  "customarily acquired by a prolonged course of specialized intellectual instruction." *See* 29

25  C.F.R. § 541.301(a).  Additionally, the duties and responsibilities assigned and performed by

26  Plaintiff and other aggrieved current and former employees did not and do not involve the regular

27  exercise of discretion and independent judgment on matters of significance to Defendants.

28

14.     Plaintiff and other aggrieved current and former employees, therefore, were and are non-exempt and entitled to all of the benefits and protections provided for under the California Labor Code and other statutes and regulations applicable to non-exempt employees in the State of California.

15.     Due to Defendants' misclassification of Plaintiff and the other aggrieved current and former employees, Defendants failed to provide overtime wages, proper meal and rest periods, and accurate itemized wage statements.  Defendants also failed to maintain accurate payroll records showing Plaintiff's and the other aggrieved current and former employees' hours worked and wages paid.

16.     Plaintiff alleges Defendants violated the Private Attorneys General Act ("PAGA"), California Labor Code § 2698 *et seq*., in the following ways:  (i) permitting, encouraging, and/or requiring Plaintiff and other aggrieved current and former employees to work in excess of eight hours per day and/or forty (40) hours per week without paying them overtime wages in violation of IWC Wage Order No. 4 and California Labor Code §§ 510, 558, 1194, and 1198; (ii) failing to provide Plaintiff and other aggrieved current and former employees proper meal periods in violation of IWC Wage Order No. 4 and California Labor Code §§ 226.7, 512, and 558; (iii) failing to provide Plaintiff and other aggrieved current and former employees proper rest periods in violation of IWC Wage Order No. 4 and California Labor Code §§ 226.7, 512, and 558; (iv) knowingly and intentionally failing to furnish Plaintiff and other aggrieved current and former employees with accurate itemized wage statements in violation of California Labor Code § 226(a); (v) unlawfully failing to maintain accurate payroll records in violation of California Labor Code §§ 1174 and 1174.5; (vi) failing to pay Plaintiff and other aggrieved current and former employees all of their wages owed in a timely manner in violation of California Labor Code §§ 204 and 210; (vii) failing to pay Plaintiff and other aggrieved current and former employees all of their wages upon termination in violation of California Labor Code §§ 203, 512, and 558; and (viii) knowingly issuing false representations about the kind, character, or existence of work available for Plaintiff in violation of California Labor Code § 970.

**FACTUAL ALLEGATIONS**

17.    Plaintiff worked for Defendants as a Senior Technical Specialist, Lighting Pre-Development, from January 4, 2016 to January 24, 2017.  Defendants' terminated Plaintiff's employment on January 24, 2017.

18.    Plaintiff was recruited to work for Defendants due to his expertise in headlight optics and automotive lighting.  This expertise was the result of approximately seven-and-a-half years of on-the-job experience.  Since graduating from a German university in 2009 with a physics degree, Plaintiff worked for Fraunhofer Institute for Applied Optics and Precision Engineering IOF and BMW Group.  Plaintiff does not have a doctorate degree.

19.    In order to persuade Plaintiff to work for Defendants, management represented to him that Defendants would, among other things:  1) initiate a green card petition for his wife in early January 2016; 2) increase his $200,000 salary if he performed well; 3) provide him with additional shares if he performed well; 4) promote him if he performed well; 5) allow him to lead the Lighting Development Group by giving him significant budgetary and technical authority; 6) invest millions of dollars into building an in-house lab to give him the ability to conduct technology development research; and 7) give him an exercise price between 97 cents and $1.25 for his shares.  These representations were false.

20.    In reliance on these representations, Plaintiff agreed to leave his secure and successful job with BMW Group in Germany, where he had significant budgetary and technical authority, and come to the Bay Area to work for Defendants.  At the time of his re-location, Plaintiff's daughter was about 11 months old.  Plaintiff sold all of his personal belongings at a loss to come work and raise his family in the Bay Area.  Indeed, Plaintiff was granted an O1 visa for three years, from January 2016 to December 2018, to facilitate this transition.  Upon his arrival in the Bay Area, Plaintiff entered into a car lease for 36 months after putting down a non-refundable $5,000 deposit and purchased another car with a six-year loan after putting down a non-refundable $5,000 deposit.  Plaintiff also entered into a two-year rental agreement for a home in Menlo Park after viewing over 25 homes.  Needless to say, Plaintiff was not planning to return to Germany

1  any time soon.

2    21.    Shortly after he arrived for work, however, Defendants instructed Plaintiff to report

3  to Lighting Manager, Ralf Meyer-Wendt, who in turn reported to Senior Director of Body

4  Engineering, Eric Bach.  Plaintiff was not given the opportunity to lead the Lighting Development

5  Group as he was originally promised.  Nor was Plaintiff given budgetary or technical authority.

6  Mr. Meyer-Wendt handled all technical and budgetary decisions.  Plaintiff had no authority over

7  design or engineering decisions, budgetary decisions, or decisions regarding the timing of projects.

8  Additionally, Plaintiff had no supervisory authority over the contractors or coworkers he worked

9  with.  In sum, Plaintiff did not exercise discretion or independent judgment on matters of

10  significance to Defendants.  *See* 29 C.F.R. § 540.207(d)(2) (explaining that the term "discretion

11  and independent judgment" applies to "the kinds of decisions normally made by persons who

12  formulate or participate in the *formulation of policy* within their spheres of responsibility or who

13  exercise authority within a wide range to commit their employer *in substantial respects financially*

14  *or otherwise*") (emphasis added).  At no point did Plaintiff make decisions that impacted

15  Defendants' policies or committed Defendants financially in a *substantial* way.

16    22.    As a Senior Technical Specialist, Plaintiff was responsible for serving as the "go-

17  between" between Defendants' design team and its engineering team.  In this capacity, Plaintiff

18  was responsible for receiving and reviewing headlight and taillight designs from the design team

19  and working with the engineering team to assess what designs were technically feasible and what

20  were not.  The overwhelming majority of Plaintiff's time was spent running computer simulations

21  with "Rhinoceros 3D," a 3D computer graphics and computer-aided design application software,

22  to perform feasibility studies, and ZEMAX OpticStudio, an optics simulation software, to simulate

23  lighting patterns.  After running these feasibility studies with the engineering team's input,

24  Plaintiff was responsible for communicating their results to the design team.  On occasion, when

25  certain designs were deemed technically infeasible, Plaintiff would work with the engineering

26  team to provide alternative technical solutions, if they were available.  Any such alternative

27  technical solutions were filtered by Mr. Meyer-Wendt before being decided upon by Mr. Bach and

28

1   members of the design team's management.

2       23.     This time intensive, back-and-forth process was driven by Mr. Meyer-Wendt and

3   Mr. Bach's decisions regarding headlight and taillight designs and budgets.  Plaintiff had no

4   decision-making authority in this process.  At no point was he "evaluat[ing] [] possible courses of

5   conduct and acting or making a decision after the various possibilities have been considered" on

6   matters of significance.  *See* 29 C.F.R. § 541.207(a); *see also* 29 C.F.R. § 541.207(g) (the

7   "customarily and regularly" requirement "is not met by the occasional exercise of discretion and

8   independent judgment").  Plaintiff's primary responsibility was to assess, with the help of

9   engineering contractors, whether the demands of the design team could be met from a technical

10  perspective using his knowledge of optics, lighting, and vehicle regulations, and his software and

11  engineering skills, and to relay that information to the design team.

12      24.     Given his educational and professional background, and the nature of his duties as

13  a Senior Technical Specialist, Plaintiff did not qualify for the professional exemption, or any other

14  exemption for that matter.  29 C.F.R. § 541.301(a) requires that "[t]o qualify for the learned

15  professional exemption, an employee's primary duty must be the performance of work requiring

16  advanced knowledge in a field of science or learning customarily acquired by a prolonged course

17  of specialized intellectual instruction.  This primary duty test includes three elements:  (1) [t]he

18  employee must perform work requiring advanced knowledge; (2) [t]he advanced knowledge must

19  be in a field of science or learning; and (3) [t]he advanced knowledge must be customarily

20  acquired by a prolonged course of specialized intellectual instruction."

21      25.     Plaintiff does not meet the third prong of this regulation.  The "advanced

22  knowledge" Plaintiff relied upon to perform his work at Defendants was not "customarily acquired

23  by a prolonged course of specialized intellectual instruction," but by his job experiences with

24  Fraunhofer Institute for Applied Optics and Precision Engineering IOF and BMW Group.

25  Plaintiff's physics degree was neither a "prolonged course of specialized intellectual instruction"

26  within the meaning of the regulation nor the source of his "advanced knowledge" in headlight

27  optics and automotive lighting.  Indeed, a review of Plaintiff's university record demonstrates that

28

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

his physics degree was earned after having taken courses spanning a broad and general spectrum. His coursework was not focused on optics or lighting.  Where employees acquire their skills by experience rather than specialized intellectual instruction, the professional exemption does not apply.  *See* 29 C.F.R. § 541.301(d) ("[t]he learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction").  That is the case here.

26.     For this reason, the professional exemption does not apply to Plaintiff.

27.     The professional exemption does not apply to Plaintiff for another reason:  his duties and responsibilities were primarily of a non-exempt nature.  Plaintiff did not customarily or regularly exercise discretion and independent judgment on matters of significance to Defendants. Plaintiff spent the overwhelming majority of his day-to-day time applying his technical knowledge and skills to various techniques, procedures, and/or standards to determine the feasibility of various design demands.  *See* 29 C.F.R. § 541.207(c)(1) ("Perhaps the most frequent cause of misapplication of the term 'discretion and independent judgment' is the failure to distinguish it from the use of skill in various respects.  *An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of Sec. 541.2.* This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.") (emphasis added).

28.     Under these circumstances, Plaintiff's duties and responsibilities do not satisfy the "job duties" test of the professional exemption.

29.     Throughout his employment, Defendants failed to compensate Plaintiff for all of the overtime hours he worked notwithstanding his status as a non-exempt employee.  Plaintiff regularly worked more than eight (8) hours in a workday or more than forty (40) hours in a workweek.  On a number of occasions, Plaintiff worked over twelve (12) hours in a day.  Plaintiff

1  estimates he worked over 900 hours of overtime (including double time).  By way of example,

2  Plaintiff worked over 40 hours *straight* in December 2016 to meet an important deadline.

3       30.  Further, Defendants failed to provide Plaintiff with meal and rest periods in

4  accordance with California law.  Because Defendants classified Plaintiff as exempt, it had no

5  policy ensuring that Plaintiff received proper and timely meal and rest periods.  Indeed, there were

6  many morning meetings that Plaintiff was required to participate in that ran well over five hours

7  without a proper meal period.  Defendants regularly pressured, encouraged, incentivized, and/or

8  required Plaintiff to perform his duties in ways that shortened and/or eliminated his legally-

9  mandated meal and rest periods.  *See Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1040

10  (2012); *Augustus v. ABM Security Services, Inc.* (Cal. Sup. Ct. 12/22/2016), Case No. S224853

11  (holding that "state law prohibits on-duty and on-call rest periods").

12       31.  For the foregoing reasons, the itemized wage statements that Defendants provided

13  to Plaintiff every pay period were inaccurate.  Defendants failed to keep accurate payroll records

14  showing the hours worked daily by Plaintiff and the wages that he should have been paid.

15       32.  Defendants failed to pay Plaintiff all of his wages owed in a timely manner at all

16  relevant times.

17       33.  Defendants also failed to pay Plaintiff all of the wages owed him upon the

18  termination of his employment.

19       34.  Finally, due to Defendants' misrepresentations, which Plaintiff relied upon to re-

20  locate to the Bay Area from Germany, Plaintiff suffered significant damages to be proven at trial.

21       35.  Given these unlawful practices, Plaintiff asserts the following causes of action:

22                       **CAUSES OF ACTION**

23                 **FIRST CAUSE OF ACTION**

24                **Failure To Pay Overtime Wages**
           **Cal. Labor Code §§ 510, 1194 and 1198,**

25                 **and Wage Order No. 4**

26       36.  Plaintiff re-alleges and incorporates by reference the allegations contained in the

27  paragraphs above as if fully set forth herein.

28

37.     During all relevant times, Plaintiff regularly worked in excess of eight (8) hours in a day and/or forty (40) hours in a week.

38.     California Labor Code § 510 and the applicable IWC Wage Order require an employer to compensate an employee at one-and-one-half times the employee's regular rate of pay for all work performed by an employee in excess of eight (8) hours up to and including twelve (12) hours in any workday, for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek, and for any work in excess of forty (40) hours in any one workweek.

39.     Additionally, California Labor Code § 510 and the applicable IWC Wage Order require an employer to compensate an employee double his or her regular rate of pay for all hours worked in excess of twelve (12) hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

40.     California Labor Code § 1194 states that any employee receiving less than the legal overtime wages applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of his wages, including interest thereon, costs and reasonable attorneys' fees.

41.     During all relevant times, Defendants knowingly and willfully failed to pay any overtime wages earned and due to Plaintiff.  Defendants' conduct deprived Plaintiff of full and timely payment for all of the overtime hours he worked in violation of the California Labor Code.

42.     Due to Defendants' knowing, willful and unlawful failure to pay Plaintiff all of his earned overtime wages, Plaintiff is entitled to recover his unpaid overtime wages, interest thereon, and the costs and attorneys' fees he incurred to enforce his rights under California Labor Code § 1194, and the relief requested below in the Prayer for Relief.

## SECOND CAUSE OF ACTION
### Failure To Provide Meal Periods
### Cal. Labor Code §§ 226.7 and 512, and Wage Order No. 4

43.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

44.     The applicable IWC Wage Order states in pertinent part, "No employer shall

1  employ any person for a work period of more than give (5) hours without a meal period of not less

2  than 30 minutes. . . . If an employer fails to provide an employee a meal period in accordance

3  with the applicable provision of this order, the employer shall pay the employee one (1) hour of

4  pay at the employee's regular rate of compensation for each workday that the meal period is not

5  provided."

6      45.    California Labor Code § 226.7(a) explains that "no employer shall require any

7  employee to work during any meal or rest period mandated by an applicable order of the Industrial

8  Welfare Commission."

9      46.    California Labor Code § 512(a) states in pertinent part: "[A]n employer may not

10  employ an employee for a work period of more than five hours per day without providing the

11  employee with a meal period of not less than 30 minutes.  An employer may not employ an

12  employee for a work period of more than 10 hours per day without providing the employee with a

13  second meal period of not less than 30 minutes . . . ."

14      47.    Defendants failed to provide Plaintiff with meal periods in accordance with

15  California law.  Defendants regularly pressured, encouraged, and/or incentivized Plaintiff to

16  perform his duties in ways that shortened and/or eliminated his legally-mandated meal periods.

17  *See Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1040 (2012).

18      48.    Due to Defendants' willful and unlawful failure to provide Plaintiff proper meal

19  periods, Plaintiff is entitled to recover one (1) hour of pay at his regular rate of compensation for

20  each workday that a meal period was not provided, and the relief requested below in the Prayer for

21  Relief.

22                    **THIRD CAUSE OF ACTION**
                    **Failure To Provide Rest Periods**
23                **Cal. Labor Code § 226.7 and Wage Order No. 4**

24      49.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

25  paragraphs above as if fully set forth herein.

26      50.    The applicable IWC Wage Order states in pertinent part, "Every employer shall

27  authorize and permit all employees to take rest periods, which insofar as practicable shall be in the

28

1  middle of each work period.  The authorized rest period time shall be based on the total hours

2  worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction

3  thereof. . . . If any employer fails to provide an employee a rest period in accordance with the

4  applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the

5  employee's regular rate of compensation for each workday that the rest period is not provided."

6       51.    California Labor Code § 226.7(a) states that "no employer shall require any

7  employee to work during any meal or rest period mandated by an applicable order of the Industrial

8  Welfare Commission."

9       52.    Plaintiff was never provided any rest periods, much less told he was entitled to

10  them, as he was at all times improperly classified by Defendants as an exempt employee.  *See*

11  *Augustus v. ABM Security Services, Inc.* (Cal. Sup. Ct. 12/22/2016), Case No. S224853 (holding

12  that "state law prohibits on-duty and on-call rest periods").

13      53.    Due to Defendants' willful and unlawful failure to provide Plaintiff proper rest

14  periods, Plaintiff is entitled to recover one (1) hour of pay at his regular rate of compensation for

15  each workday that a rest period was not provided, and the relief requested below in the Prayer for

16  Relief.

17                          **FOURTH CAUSE OF ACTION**
18                 **Failure To Pay All Wages Upon Termination Of Employment**
                          **Cal. Labor Code §§ 201 and 203**
19

20      54.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

21  paragraphs above as if fully set forth herein.

22      55.    California Labor Code § 201 provides that when "an employer discharges an

23  employee, the wages earned and unpaid at the time of discharge are due and payable

24  immediately."

25      56.    Where an employer willfully fails to pay a terminated employee all wages due as

26  required under the California Labor Code, the employer is liable to such employee under Labor

27  Code § 203 for waiting time penalties in the amount of one (1) day's compensation at the

28

                                           12

1    employee's regular rate of pay for each day the wages are withheld, up to thirty (30) days.

2        57.    Due to Defendants' knowing, willful and unlawful failure to provide Plaintiff with

3    all of the wages he was owed as alleged herein at the time of his termination in violation of

4    California Labor Code § 201, Plaintiff is entitled to waiting time penalties under California Labor

5    Code § 203, and the relief requested below in the Prayer for Relief.

6

7    **FIFTH CAUSE OF ACTION**
     **Failure To Furnish Accurate Itemized Wage Statements**
     **Cal. Labor Code § 226 and Wage Order No. 4**

8

9        58.    Plaintiff re-alleges and incorporates by reference the allegations contained in the

10   paragraphs above as if fully set forth herein.

11       59.    California Labor Code § 226 provides, in relevant part, that an employer must

12   furnish each employee with an itemized wage statement showing the total number of hours

13   worked each pay period, gross wages, net wages, all deductions, all applicable hourly rates of pay,

14   and other information.

15       60.    During all relevant times, Defendants willfully failed to furnish to Plaintiff, upon

16   each payment of compensation, itemized wage statements accurately showing, at a minimum:  the

17   total hours worked, gross wages, net wages, applicable hourly wages and the corresponding hours

18   worked at each hourly rate.

19       61.    During all relevant times, Plaintiff was damaged by these failures because, among

20   other things, he was led to believe that he was not entitled to be paid overtime wages, even though

21   he was so entitled, and because the failures hindered him from determining the proper amounts of

22   overtime wages owed to him.

23       62.    California Labor Code § 226(e) provides that an employee suffering injury as a

24   result of not being provided with an accurate itemized wage statement is entitled to recover the

25   greater of all actual damages suffered or fifty ($50) dollars for the initial violation and one-

26   hundred ($100) dollars for each subsequent violation.

27       63.    Due to Defendants' failure to provide accurate itemized wage statements, Plaintiff

28

is entitled to the amounts provided for in California Labor Code § 226(e), plus costs and reasonable attorneys' fees, and the relief requested below in the Prayer for Relief.

## SIXTH CAUSE OF ACTION
### Failure To Maintain Accurate Payroll Records
### Cal. Labor Code § 1174 and Wage Order No. 4

64.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

65.     During all relevant times, Defendants violated California Labor Code § 1174 by willfully failing to maintain payroll records accurately showing the hours worked daily by Plaintiff and the wages paid thereto.

66.     Plaintiff requests the Court to award judgment and relief in his favor including, without limitation, the relief requested below in the Prayer for Relief.

## SEVENTH CAUSE OF ACTION
### Failure To Pay All Wages In A Timely Manner
### Cal. Labor Code § 204 and Wage Order No. 4

67.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

68.     California Labor Code § 204 requires employers to pay all wages twice during each calendar month, on days designated in advance by the employer as the regular paydays.

69.     During all relevant times, Defendants failed to pay Plaintiff for all of the hours he worked no later than the payday for the following pay period.

70.     Defendants' conduct deprived Plaintiff of full and timely payment for all of the hours he worked in violation of the California Labor Code.

71.     Due to Defendants' willful and unlawful failure to pay Plaintiff his earned wages, Plaintiff is entitled to recover his unpaid wages, and the relief requested below in the Prayer for Relief.

**EIGHTH CAUSE OF ACTION**
**Unfair Competition Law Violations**
**Cal. Business & Professions Code § 17200 *et seq.***

72.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

73.     California Business & Professions Code § 17200 *et seq.* prohibits unfair competition in the form of any unlawful, unfair, deceptive, or fraudulent business practices.

74.     During all relevant times, Defendants committed unlawful, unfair, deceptive, and/or fraudulent acts as defined by California Business & Professions Code § 17200. Defendants' unlawful, unfair, deceptive, and/or fraudulent business practices include, without limitation, failing to pay overtime wages and failing to pay all of Plaintiff's wages upon the termination of his employment as required by the California Labor Code and the applicable IWC Wage Order, and converting Plaintiff's wages for Defendants' benefit and use.

75.     As a result of this unlawful and/or unfair and/or fraudulent business practice, Defendants reaped unfair benefits and illegal profits at Plaintiff's expense.  Defendants must disgorge these ill-gotten gains and restore to Plaintiff all wrongfully withheld wages including, but not limited to, overtime wages.

76.     Plaintiff respectfully requests that judgment be awarded in his favor to provide restitution, and the relief requested below in the Prayer for Relief.

**NINTH CAUSE OF ACTION**
**Violation Of The Private Attorneys General Act ("PAGA")**
**Cal. Labor Code § 2698 *et seq.***

77.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

78.     Plaintiff is an "aggrieved employee" under the Private Attorneys General Act ("PAGA") as he was employed by Defendants during the applicable statutory period and suffered one or more of the California Labor Code violations alleged herein.  As such, he seeks to recover,

1  on behalf of himself and all other aggrieved current and former employees, the civil penalties

2  provided by PAGA, plus costs and reasonable attorneys' fees.

3      79.    Plaintiff seeks to recover civil penalties through a representative action as permitted

4  by PAGA and the California Supreme Court in *Arias v. Superior Court,* 46 Cal. 4th 969 (2009).

5      80.    Plaintiff seeks to pursue remedies pursuant to PAGA for the following violations:

6      81.    California Labor Code § 210 imposes a civil penalty in the amount of $100 per

7  employee per initial violation of the timely payment requirements of Labor Code § 204 and $200

8  per employee for each subsequent violation, plus 25% of the amount unlawfully withheld.

9      82.    California Labor Code § 226.3 imposes a civil penalty in addition to any other

10  penalty provided by law of two hundred fifty dollars ($250) per aggrieved employee for the first

11  violation, and one thousand dollars ($1,000) per aggrieved employee for each subsequent violation

12  of California Labor Code § 226(a).

13      83.    Pursuant to California Labor Code § 203, for an employer who willfully fails to pay

14  any wages of an employee who is discharged or quits, that employee's wages shall continue as a

15  penalty from the due date at the same rate until paid, but shall not continue for more than thirty

16  (30) days.  California Labor Code § 256 imposes a civil penalty in an amount not exceeding thirty

17  (30) days pay as waiting time under the terms of California Labor Code § 203.

18      84.    California Labor Code § 558(a) provides as follows:

20      Any employer or other person acting on behalf of an employer who violates, or
21      causes to be violated, a section of this chapter or any provision regulating hours and
        days of work in any order of the Industrial Welfare Commission shall be subject to
22      a civil penalty as follows:  (1)  For any initial violation, fifty dollars ($50) for each
        underpaid employee for each pay period for which the employee was underpaid in
23      addition to an amount sufficient to recover underpaid wages.  (2)  For each
        subsequent violation, one hundred dollars ($100) for each underpaid employee for
24      each pay period for which the employee was underpaid in addition to an amount
        sufficient to recover underpaid wages.  (3)  Wages recovered pursuant to this
25      section shall be paid to the affected employee.

26      California Labor Code § 558(d) states that the civil penalties provided for in

27  subsection (a) are "in addition to any other civil or criminal penalty provided by law."

85.     Under California Labor Code § 1174.5, Defendants are subject to a civil penalty of five hundred dollars ($500) for failing to keep records as required by section 1174(d).

86.     California Labor Code § 2698 *et seq.* imposes a civil penalty of one hundred dollars ($100) per pay period, per aggrieved employee for the initial violation of California Labor Code §§ 204, 226, 226.7, 510, 512, 970, 1174, 1194, 1198 and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

87.     Plaintiff has fully complied with the procedural requirements specified in California Labor Code § 2699.3 as to each of the alleged violations.  On February 17, 2017, Plaintiff submitted online a written notice of Defendants' violations of various provisions of the California Labor Code to the California Labor and Workforce Development Agency ("LWDA"). Plaintiff served a copy of this written notice to Defendants by certified mail.

88.     The LWDA did not provide notice of its intention to investigate Defendants' alleged violations within sixty-five (65) calendar days of the February 17, 2017, the postmark date of Plaintiff's written notice.  *See* Cal. Lab. Code § 2699.3(a)(2)(A).  Plaintiff therefore is entitled to pursue his civil penalty claims pursuant to California Labor Code § 2698 *et seq.*

89.     Enforcement of statutory provisions to protect workers and to ensure proper and prompt payment of wages is a fundamental public interest.  Plaintiff's successful enforcement of important rights affecting the public interest will confer a significant benefit upon the general public.  Private enforcement of these rights is necessary, as no public agency has pursued enforcement.  It would be against the interests of justice to require the payment of attorneys' fees and costs from any recovery obtained, pursuant to, *inter alia*, California Labor Code § 2699(g)(1).

90.     Due to the violations alleged herein, Plaintiff, on behalf of himself and other aggrieved current and former employees, seeks all civil penalties available pursuant to California Labor Code § 2698 *et seq.* plus costs and reasonable attorneys' fees, and the relief requested below in the Prayer for Relief.

1

## TENTH CAUSE OF ACTION
### Conversion

2

3      91.     Plaintiff re-alleges and incorporates by reference the allegations contained in the

4  paragraphs above as if fully set forth herein.

5      92.     During all relevant times, Defendants knowingly and willfully failed to pay

6  Plaintiff any overtime wages despite working a significant amount of overtime hours.  By doing

7  so, Defendants converted Plaintiff's earned wages for their benefit and use.

8      93.     Defendants' conduct deprived Plaintiff of full and timely payment for all the

9  overtime hours he worked in violation of the California Labor Code.  *See Sims v. AT&T Mobility*

10  *Servs. LLC,* 955 F. Supp. 2d 1110, 1119-20 (N.D. Cal. 2013) ("there is clear authority under

11  California law that employees have a vested property interest in the wages that they earn, failure to

12  pay them is a legal wrong that interferes with the employee's title in the wages, and an action for

13  conversion can therefore be brought to recover unpaid wages").

14      94.     In committing the acts described herein, Defendants are guilty of oppression, fraud

15  and/or malice as they wrongfully and unlawfully misappropriated Plaintiff's wages to benefit

16  themselves at Plaintiff's expense.  Plaintiff therefore is entitled to punitive damages.

17

## ELEVENTH CAUSE OF ACTION
### Declaratory Relief

18

19      95.     Plaintiff re-alleges and incorporates by reference the allegations contained in the

20  paragraphs above as if fully set forth herein.

21      96.     An actual controversy has arisen and now exists between Plaintiff and Defendants

22  regarding their respective rights and duties.  Plaintiff contends he was a non-exempt employee of

23  Defendants at all relevant times.  Defendants, on the other hand, contend that Plaintiff was an

24  exempt employee at all relevant times.

25      97.     Plaintiff seeks a judicial determination as to whether he was a non-exempt

26  employee of Defendants at all relevant times.  A judicial determination of this controversy is

27  necessary and appropriate.  This will determine whether Plaintiff is entitled to all of the benefits

28

and protections provided for under the California Labor Code and the applicable IWC Wage Order.

### TWELFTH CAUSE OF ACTION
**False Representations To Induce Relocation**
**Cal. Labor Code §§ 970 and 972**

98.     Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

99.     California Labor Code § 970 prohibits employers from influencing, persuading, or engaging any person to change his or her residence from any place outside of California to any place within California for the purpose of working by means of knowingly false representations concerning any of the following:  (a) the kind, character, or existence of such work; (b) the length of time such work will last, or the compensation therefor; (c) the sanitary or housing conditions relating to or surrounding the work; and (d) the existence or nonexistence of any strike, lockout, or other labor dispute affecting it and pending between the proposed employee and the persons then or last engaged in the performance of the labor for which the employee is sought.

100.    California Labor Code § 972 permits employees to seek double damages for any violation of California Labor Code § 970 by an employer in a civil action.

101.    In order to persuade Plaintiff to work for Defendants, management represented to him that Defendants would, among other things:  1) initiate a green card petition for his wife in early January 2016; 2) increase his $200,000 salary if he performed well; 3) provide him with additional shares if he performed well; 4) promote him if he performed well; 5) allow him to lead the Lighting Development Group by giving him significant budgetary and technical authority; 6) invest millions of dollars into building an in-house lab to give him the ability to conduct technology development research; and 7) give him an exercise price between 97 cents and $1.25 for his shares.

102.    In reliance on these representations, Plaintiff agreed to leave his secure and successful job with BMW Group in Germany to come to the Bay Area to work for Defendants.

103.    Shortly after he arrived for work, however, Defendants instructed Plaintiff to report to Lighting Manager, Ralf Meyer-Wendt.  Plaintiff was never given the opportunity to lead the Lighting Development Group as he was originally promised.  Nor was Plaintiff given any budgetary or technical authority.  Mr. Meyer-Wendt handled all technical and budgetary decisions. Plaintiff had no authority over design or engineering decisions, budgetary decisions, or decisions regarding the timing of projects.  Additionally, Plaintiff had no supervisory authority over any contractors or coworkers he worked with.  In short, Defendants relegated Plaintiff to a supporting role comprised of non-exempt duties and responsibilities contrary to what was promised him. Plaintiff's position with Defendants was effectively a "demotion" from his prior position with BMW Group, where he had significant budgetary and technical authority.

104.    Defendants never invested the resources to building an in-house lab of the scale that was promised to Plaintiff.  Rather, Defendants built a small lab, which was effectively useless for purposes of conducting technology development research.

105.    In addition, Defendant informed Plaintiff after he arrived in the Bay Area that his shares had an exercise price of $1.42, which was beyond the range of 97 cents and $1.25 as was originally promised to him.

106.    In December 2016, Mr. Bach informed Plaintiff that he was "satisfied" with his performance, but did not increase his salary, give him additional shares, or give him a promotion.

107.    Finally, Defendants failed to initiate a green card petition for Plaintiff's wife in early January 2016 as they originally promised.

108.    Plaintiff would not have accepted his position with Defendants had he known prior to leaving Germany that the representations given to him by Defendants to persuade him to leave his secure and successfully job with BMW Group in Germany to work for Defendants were false.

109.    Due to Defendants' knowingly false misrepresentations described herein, Plaintiff is entitled to recover double damages, and the relief requested below in the Prayer for Relief.

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

## THIRTEENTH CAUSE OF ACTION
### Intentional Misrepresentations

110.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

111.    In order to persuade Plaintiff to work for Defendants, management represented to him that Defendants would, among other things:  1) initiate a green card petition for his wife in early January 2016; 2) increase his $200,000 salary if he performed well; 3) provide him with additional shares if he performed well; 4) promote him if he performed well; 5) allow him to lead the Lighting Development Group by giving him significant budgetary and technical authority; 6) invest millions of dollars into building an in-house lab to give him the ability to conduct technology development research; and 7) give him an exercise price between 97 cents and $1.25 for his shares.

112.    Defendants' representations were false.  Defendants knew these representations were false when they made them.  Alternatively, Defendants made them recklessly and without regard for their truth.

113.    Defendants intended for Plaintiff to rely upon these representations to induce him to leave his secure and successful job with BMW Group in Germany to come to the Bay Area to work for Defendants.

114.    Trusting Defendants' representations, Plaintiff reasonably relied upon them and left his secure and successful job with BMW Group in Germany to come to the Bay Area to work for Defendants.

115.    Due to Plaintiff's reliance on Defendants' representations, Plaintiff was harmed. Defendants relegated Plaintiff to a supporting role comprised of non-exempt duties and responsibilities contrary to what was promised him.  Plaintiff's position with Defendants was effectively a "demotion" from his prior position with BMW Group, where he had significant budgetary and technical authority.  Plaintiff's reliance on Defendants' representations was a substantial factor in causing his harm.  Plaintiff would not have accepted his position with

1  Defendants had he known prior to leaving Germany that the representations given to him by

2  Defendants to persuade him to leave his secure and successfully job with BMW Group in

3  Germany to work for Defendants were false.

4      116.   In committing the acts described herein, Defendants are guilty of oppression, fraud

5  and/or malice as they wrongfully and unlawfully induced Plaintiff to leave his secure and

6  successful job with BMW Group in Germany to come to the Bay Area to work for Defendants.

7  Plaintiff therefore is entitled to punitive damages.

8              **FOURTEENTH CAUSE OF ACTION**
9              **Negligent Misrepresentations**

10     117.   Plaintiff re-alleges and incorporates by reference the allegations contained in the

11  paragraphs above as if fully set forth herein.

12     118.   In order to persuade Plaintiff to work for Defendants, management represented to

13  him that Defendants would, among other things:  1) initiate a green card petition for his wife in

14  early January 2016; 2) increase his $200,000 salary if he performed well; 3) provide him with

15  additional shares if he performed well; 4) promote him if he performed well; 5) allow him to lead

16  the Lighting Development Group by giving him significant budgetary and technical authority; 6)

17  invest millions of dollars into building an in-house lab to give him the ability to conduct

18  technology development research; and 7) give him an exercise price between 97 cents and $1.25

19  for his shares.

20     119.   Defendants' representations were false.  Although Defendants may have honestly

21  believed that the representations were true, they had no reasonable grounds for believing the

22  representations were true when they made them.

23     120.   Defendants intended for Plaintiff to rely upon these representations to induce him

24  to leave his secure and successful job with BMW Group in Germany to come to the Bay Area to

25  work for Defendants.

26     121.   Trusting Defendants' representations, Plaintiff reasonably relied upon them and left

27  his secure and successful job with BMW Group in Germany to come to the Bay Area to work for

28

1  Defendants.

2       122.    Due to Plaintiff's reliance on Defendants' representations, Plaintiff was harmed.

3  Defendants relegated Plaintiff to a supporting role comprised of non-exempt duties and

4  responsibilities contrary to what was promised him.  Plaintiff's position with Defendants was

5  effectively a "demotion" from his prior position with BMW Group, where he had significant

6  budgetary and technical authority.  Plaintiff's reliance on Defendants' representations was a

7  substantial factor in causing his harm.  Plaintiff would not have accepted his position with

8  Defendants had he known prior to leaving Germany that the representations given to him by

9  Defendants to persuade him to leave his secure and successfully job with BMW Group in

10  Germany to work for Defendants were false.

11       123.    In committing the acts described herein, Defendants are guilty of oppression, fraud

12  and/or malice as they wrongfully and unlawfully induced Plaintiff to leave his secure and

13  successful job with BMW Group in Germany to come to the Bay Area to work for Defendants.

14  Plaintiff therefore is entitled to punitive damages.

15                                                **PRAYER FOR RELIEF**

16      Plaintiff respectfully prays for relief as follows:

17       1.    A declaration that Plaintiff was a non-exempt employee of Defendants at all

18            relevant times;

19       2.    An award of damages, restitution, statutory penalties, civil penalties, and punitive

20            damages to be paid by Defendants for the causes of action alleged herein;

21       3.    Double damages pursuant to California Labor Code § 972;

22       4.    An award of costs and expenses, including reasonable attorneys' fees and expert

23            fees, pursuant to California Labor Code §§ 226, 1194, and 2699(g)(1), or as

24            otherwise permitted by law;

25       5.    An award of pre-judgment and post-judgment interest, as provided by law; and

26       6.    All such other relief the Court deems just, necessary, and proper.

27

28

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED

1

DATED:  June 1, 2017                    SOHN LEGAL GROUP, P.C.

2

3                                       By: _____

4                                           David D. Sohn

5                                       Attorneys for Plaintiff

6                                       MARCEL SIELER

7

8                                 **DEMAND FOR JURY TRIAL**

9

    Plaintiff hereby respectfully demands a trial by jury.

10

11

DATED:  June 1, 2017                    SOHN LEGAL GROUP, P.C.

12

13

14                                      By: _____

                                        David D. Sohn

15

16                                      Attorneys for Plaintiff
                                        MARCEL SIELER

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES – JURY TRIAL DEMANDED